1  TRACY L. WILKISON
   Acting United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   KELLYE NG-McCULLOUGH (Cal. Bar No. 313051)
4  MAXWELL COLL (Cal. Bar No. 312651)
   Assistant United States Attorney
5  General Crimes Section
        1200 United States Courthouse
6       312 North Spring Street
        Los Angeles, California 90012
7       Telephone: (213) 894-8408/1785
        Facsimile: (213) 894-0141
8       Email:    Kellye.Ng-McCullough@usdoj.gov
                  Maxwell.Coll@usdoj.gov
9

10 Attorneys for Plaintiff
   UNITED STATES OF AMERICA
11

12                 UNITED STATES DISTRICT COURT

13            FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 UNITED STATES OF AMERICA,          No. CR 20-308-PA

15          Plaintiff,                PLEA AGREEMENT FOR DEFENDANT
                                      CHELSA COLLIER
16          v.

17 CHELSA COLLIER,

18          Defendant.

19

20      1.   This constitutes the plea agreement between CHELSA COLLIER

21 ("defendant") and the United States Attorney's Office for the Central

22 District of California (the "USAO") in the above-captioned case.

23 This agreement is limited to the USAO and cannot bind any other

24 federal, state, local, or foreign prosecuting, enforcement,

25 administrative, or regulatory authority.

26                      DEFENDANT'S OBLIGATIONS

27      2.   Defendant agrees to:

28

ACP
10/05/2021

a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count one of the indictment in United States v. CHELSA COLLIER, CR No. 20-308-PA, which charges defendant with possession with intent to distribute fentanyl, a Schedule II narcotic controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi).

b.    Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Not commit any crime or any act constituting obstruction of justice; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

e.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

f.    Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

g.    Agree to and not oppose the imposition of the following conditions of probation or supervised release: (i) participation in an in-patient and/or out-patient program of mental health treatment as directed by the United States Probation and Pretrial Services Office; and (ii) participation in an in-patient and/or out-patient program for drug or alcohol abuse treatment and counseling, including urinalysis or sweat patch testing and counseling, as directed by the United States Probation and Pretrial Services Office.

THE USAO'S OBLIGATIONS

3.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the remaining count of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.    Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, subject to any applicable statutory mandatory minimum, provided that the offense level used by the Court to determine that range is 23 or higher, and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

f.    Recommend that defendant's sentence include no deprivation of federal benefits.

1            g.    Except for criminal tax violations (including
2    conspiracy to commit such violations chargeable under 18 U.S.C.
3    § 371), not further criminally prosecute defendant for violations of
4    21 U.S.C. §§ 841(a)(1), (b)(1)(D) arising out of defendant's conduct
5    described in the agreed-to factual basis set forth in paragraph 13
6    below.   Defendant understands that the USAO is free to criminally
7    prosecute defendant for any other unlawful past conduct or any
8    unlawful conduct that occurs after the date of this agreement.
9    Defendant agrees that at the time of sentencing the Court may
10   consider the uncharged conduct in determining the applicable
11   Sentencing Guidelines range, the propriety and extent of any
12   departure from that range, and the sentence to be imposed after
13   consideration of the Sentencing Guidelines and all other relevant
14   factors under 18 U.S.C. § 3553(a).

15                   POSSIBLE PARTICIPATION IN CASA PROGRAM

16        4.    Defendant may request consideration for participation in
17   the Court's Conviction and Sentence Alternatives ("CASA") program.
18   Defendant understands that her application will be reviewed by the
19   USAO and the CASA program team using their ordinary procedures for a
20   determination whether defendant would be accepted for participation
21   in the CASA program, and there is no certainty that defendant would
22   be accepted for participation in the CASA program.   With this
23   understanding in mind, defendant and the USAO agree as follows:

24            a.    Defendant will submit her CASA application, if any, no
25   later than February 1, 2022;

26            b.    After entry of defendant's guilty plea, defendant and
27   the USAO will request that preparation of a presentence investigation
28   report be delayed;

4

1    c.    If the CASA program team determines that defendant
2  should be accepted for participation in the CASA program, defendant
3  and the USAO will execute an amended plea agreement incorporating the
4  terms of defendant's participation in the CASA program, leaving all
5  other terms of the instant plea agreement in effect ("CASA plea
6  agreement");

7    d.    If defendant and the USAO file a CASA plea agreement,
8  they will jointly request that the Court (i) order that this case be
9  transferred to the CASA judicial officer; (ii) refer defendant to the
10  CASA program for the CASA program judicial officer to take
11  defendant's amended guilty plea pursuant to the CASA plea agreement;
12  and (iii) permit defendant to begin her participation in the CASA
13  program;

14    e.    If either: (i) defendant does not submit her CASA
15  application by February 1, 2022; (ii) defendant is not accepted for
16  participation in the CASA program; or (iii) the Court does not agree
17  to allow defendant's participation in the CASA program; then
18  defendant's guilty plea pursuant to this agreement shall remain in
19  place, and the parties will jointly request that the Court set a date
20  for defendant's sentencing and order that the United States Probation
21  Office prepare defendant's presentence report.

22                          NATURE OF THE OFFENSE

23    5.    Defendant understands that for defendant to be guilty of
24  the crime charged in count one of the indictment, that is, possession
25  with intent to distribute fentanyl, in violation of 21 U.S.C.
26  §§ 841(a)(1), (b)(1)(A)(vi), the following must be true:

27

28

                                  5

1        a.    Defendant knowingly possessed N-phenyl-N-[1-(2-

2  phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II

3  narcotic drug controlled substance; and

4        b.    Defendant possessed the fentanyl with the intent to

5  distribute it to another person.  To possess with intent to

6  distribute means to possess with intent to deliver or transfer

7  possession of fentanyl to another person, with or without any

8  financial interest in the transaction.  It does not matter whether

9  defendant knew that the substance was fentanyl.  It is sufficient

10  that defendant knew that it was some kind of federally controlled

11  substance.  It is sufficient that defendant was aware of a high

12  probability that defendant possessed fentanyl and that defendant

13  deliberately avoided learning the truth.

14      6.    Defendant understands that for defendant to be subject to

15  the statutory mandatory minimum sentence set forth below, the

16  government must prove beyond a reasonable doubt that defendant

17  possessed at least 400 grams of a mixture or substance containing a

18  detectable amount of fentanyl.  Defendant admits that defendant, in

19  fact, possessed with intent to distribute at least 400 grams of

20  fentanyl.

21                            PENALTIES

22      7.    Defendant understands that the statutory maximum sentence

23  that the Court can impose for possession with intent to distribute

24  fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi), as

25  charged in count one, is: life imprisonment; a lifetime period of

26  supervised release; a fine of $10,000,000 or twice the gross gain or

27  gross loss resulting from the offense, whichever is greatest; and a

28  mandatory special assessment $100.

8.    Defendant understands that, absent a determination by the Court that defendant's case satisfies the criteria set forth in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, the statutory minimum sentence that the Court must impose for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi), as charged in count one, is: ten years' imprisonment, followed by a five-year period of supervised release, and a mandatory special assessment of $100.

9.    Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

10.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

11.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral

7

1 consequences, including but not limited to revocation of probation,
2 parole, or supervised release in another case and suspension or
3 revocation of a professional license.  Defendant understands that
4 unanticipated collateral consequences will not serve as grounds to
5 withdraw defendant's guilty plea.

6       12.  Defendant and her counsel have discussed the fact that, and
7 defendant understands that, if defendant is not a United States
8 citizen, the conviction in this case makes it practically inevitable
9 and a virtual certainty that defendant will be removed or deported
10 from the United States.  Defendant may also be denied United States
11 citizenship and admission to the United States in the future.
12 Defendant understands that while there may be arguments that
13 defendant can raise in immigration proceedings to avoid or delay
14 removal, removal is presumptively mandatory and a virtual certainty
15 in this case.  Defendant further understands that removal and
16 immigration consequences are the subject of a separate proceeding and
17 that no one, including her attorneys or the Court, can predict to an
18 absolute certainty the effect of her conviction on her immigration
19 status.  Defendant nevertheless affirms that she wants to plead
20 guilty regardless of any immigration consequences that her plea may
21 entail, even if the consequence is automatic removal from the United
22 States.

23                               FACTUAL BASIS

24      13.  Defendant admits that defendant is, in fact, guilty of the
25 offense to which defendant is agreeing to plead guilty.  Defendant
26 and the USAO agree to the statement of facts provided below and agree
27 that this statement of facts is sufficient to support a plea of
28 guilty to the charge described in this agreement and to establish the

                                    8

Sentencing Guidelines factors set forth in paragraph 15 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

On April 8, 2020, within the Central District of California, defendant knowingly possessed federally controlled substances, namely, fentanyl, heroin, and marijuana, with the intent to distribute them to another person.

Specifically, on April 8, 2020, defendant was scheduled to travel on a flight from Los Angeles to Indianapolis, Indiana, by way of Detroit, Michigan. Before leaving the Los Angeles home at which she had been staying for the Los Angeles International Airport ("LAX"), defendant was instructed by another person to leave her luggage -- a pink roller bag -- at the home's door. Defendant then left her bag by the door, knowing that there was a high probability that the other person would place distribution quantities of drugs in her bag. Defendant then took her bag to LAX and checked it at the Delta Airlines checked luggage counter, before defendant proceeded to the boarding area for her flight to Detroit.

TSA screened defendant's checked bag -- which bore a Delta Airlines luggage tag with her name and flight information -- and found several vacuum-sealed packages containing approximately 1,128 grams of fentanyl, approximately 940 grams of heroin, and approximately 2,620 grams of marijuana.

When questioned by LAX Police Department officers, defendant admitted that the bag belonged to her; said that she had packed her own bag that morning; and said that no one else possessed the bag until she checked it with Delta Airlines. When asked about the

drugs, defendant stated she had no idea how drugs would get in her bag. In truth, however, at all relevant times, defendant was aware of a high probability that her bag contained distribution quantities of federally controlled substances, namely, fentanyl, heroin, and marijuana, and defendant deliberately avoided learning the truth.

Before defendant's April 8, 2020 arrest at LAX, defendant engaged in text-message conversations about drug trafficking, separate from the charged crime. In response to a $200 quote she was given for "zip," or marijuana, defendant complained, "I'm middle manning trying to make something too." The text messages were sent before defendant's arrest and did not involve fentanyl or heroin.

## SENTENCING FACTORS

14. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crime of conviction.

15. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

1    Base Offense Level:              30[1]      U.S.S.G. § 2D1.1(a)(5),

2                                                (c)(4)

3    Minor Participant:              -2          U.S.S.G. § 3B1.2(b)

4  Defendant and the USAO reserve the right to argue that additional

5  specific offense characteristics, adjustments, and departures under

6  the Sentencing Guidelines are appropriate.

7        16.  Defendant and the USAO agree that:

8             a.   Defendant did not use violence or credible threats of

9  violence or possess a firearm or other dangerous weapon (or induce

10 another participant to do so) in connection with the offense charged

11 in count one;

12            b.   The offense charged in count one did not result in

13 death or serious bodily injury to any person; and

14            c.   Defendant was not an organizer, leader, manager, or

15 supervisor of others in the offense charged in count one and was not

16 engaged in a continuing criminal enterprise.

17    17.  Because the safety valve criteria in U.S.S.G. § 5C1.2(a)(1)

18 has not been updated to match the language of 18 U.S.C. § 3553(f)(1),

19 if the Court determines that defendant's case satisfies the criteria

20 in 18 U.S.C. § 3553(f), but does not satisfy the criteria for a two-

21 level reduction under U.S.S.G. § 2D1.1(b)(18) (referencing the

22

23

24      [1] Under U.S.S.G § 2D1.1 Application Note 8, 1,128 grams of
   fentanyl amounts to 2,820 kilograms of converted drug weight, 940
   grams of heroin amounts to 940 kilograms of converted drug weight,
25 and 2,620 grams of marijuana amounts to 2.62 kilograms of converted
   drug weight, for a combined total of 3,762.62 kilograms of converted
26 drug weight.  Under U.S.S.G. § 2D1.1(c)(4), 3,762.62 kilograms of
   converted drug weight -- that is, between 3,000 kilograms and 10,000
27 kilograms of converted drug weight -- results in a total offense
   level of 32, unless defendant receives a mitigating role adjustment,
28 in which case it results in a total offense level of 30, under
   U.S.S.G. § 2D1.1(a)(5)(A), (B)(i).

criteria set forth in U.S.S.G. § 5C1.2(a)(1)), the government will recommend a two-level downward variance to defendant's Sentencing Guidelines range based on the factors set forth in 18 U.S.C. § 3553(a). By making any such recommendation, the government does not waive any objection to the Court's determination that the criteria in 18 U.S.C. § 3553(f) have been satisfied. If the government makes a two-level variance recommendation as described herein, defendant agrees not to seek a further reduced sentence pursuant to 18 U.S.C. § 3582(c)(2) in the event the United States Sentencing Commission amends U.S.S.G. § 5C1.2(a)(1) to match the language of 18 U.S.C. § 3553(f)(1).

18.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.  The right to persist in a plea of not guilty.

b.  The right to a speedy and public trial by jury.

c.  The right to be represented by counsel -- and, if necessary, to have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and, if necessary, to have the Court appoint counsel -- at every other stage of the proceeding.

1          d.    The right to be presumed innocent and to have the
2    burden of proof placed on the government to prove defendant guilty
3    beyond a reasonable doubt.

4          e.    The right to confront and cross-examine witnesses
5    against defendant.

6          f.    The right to testify and to present evidence in
7    opposition to the charges, including the right to compel the
8    attendance of witnesses to testify.

9          g.    The right not to be compelled to testify, and, if
10   defendant chose not to testify or present evidence, to have that
11   choice not be used against defendant.

12         h.    Any and all rights to pursue any affirmative defenses,
13   Fourth Amendment or Fifth Amendment claims, and other pretrial
14   motions that have been filed or could be filed.

15                     WAIVER OF APPEAL OF CONVICTION

16        21.   Defendant understands that, with the exception of an appeal
17   based on a claim that defendant's guilty plea was involuntary, by
18   pleading guilty defendant is waiving and giving up any right to
19   appeal defendant's conviction on the offense to which defendant is
20   pleading guilty.  Defendant understands that this waiver includes,
21   but is not limited to, arguments that the statute to which defendant
22   is pleading guilty is unconstitutional, and any and all claims that
23   the statement of facts provided herein is insufficient to support
24   defendant's plea of guilty.

25             WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

26        22.   Defendant gives up the right to appeal all of the
27   following: (a) the procedures and calculations used to determine and
28   impose any portion of the sentence; (b) the term of imprisonment

                                   13

1  imposed by the Court, including, to the extent permitted by law, the
2  constitutionality or legality of defendant's sentence, provided it is
3  within the statutory maximum; (c) the fine imposed by the Court,
4  provided it is within the statutory maximum; (d) the term of
5  probation or supervised release imposed by the Court, provided it is
6  within the statutory maximum; and (e) any of the following conditions
7  of probation or supervised release imposed by the Court: the
8  conditions set forth in Second Amended General Order 20-04 of this
9  Court; the drug testing conditions mandated by 18 U.S.C.
10 §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions
11 authorized by 18 U.S.C. § 3563(b)(7).

12      23.   Defendant also gives up any right to bring a post-
13 conviction collateral attack on the conviction or sentence, except a
14 post-conviction collateral attack based on a claim of ineffective
15 assistance of counsel, a claim of newly discovered evidence, or an
16 explicitly retroactive change in the applicable Sentencing
17 Guidelines, sentencing statutes, or statutes of conviction.
18 Defendant understands that this waiver includes, but is not limited
19 to, arguments that the statute to which defendant is pleading guilty
20 is unconstitutional, and any and all claims that the statement of
21 facts provided herein is insufficient to support defendant's plea of
22 guilty.

23      24.   The USAO agrees that, provided (a) all portions of the
24 sentence are at or below the statutory maximum specified above and
25 (b) the Court imposes a term of imprisonment within or above the
26 range corresponding to an offense level of 23 and the criminal
27 history category calculated by the Court, the USAO gives up is right
28 to appeal any portion of the sentence.

1

## RESULT OF WITHDRAWAL OF GUILTY PLEA

2    25.    Defendant agrees that if, after entering a guilty plea
3  pursuant to this agreement, defendant seeks to withdraw and succeeds
4  in withdrawing defendant's guilty plea on any basis other than a
5  claim and finding that entry into this plea agreement was
6  involuntary, then (a) the USAO will be relieved of all of its
7  obligations under this agreement; and (b) should the USAO choose to
8  pursue any charge that was either dismissed or not filed as a result
9  of this agreement, then (i) any applicable statute of limitations
10  will be tolled between the date of defendant's signing of this
11  agreement and the filing commencing any such action; and
12  (ii) defendant waives and gives up all defenses based on the statute
13  of limitations, any claim of pre-indictment delay, or any speedy
14  trial claim with respect to any such action, except to the extent
15  that such defenses existed as of the date of defendant's signing this
16  agreement.

17

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

18    26.    Defendant agrees that if the count of conviction is
19  vacated, reversed, or set aside, both the USAO and defendant will be
20  released from all their obligations under this agreement.

21

## EFFECTIVE DATE OF AGREEMENT

22    27.    This agreement is effective upon signature and execution of
23  all required certifications by defendant, defendant's counsel, and an
24  Assistant United States Attorney.

25

## BREACH OF AGREEMENT

26    28.    Defendant agrees that if defendant, at any time after the
27  signature of this agreement and execution of all required
28  certifications by defendant, defendant's counsel, and an Assistant

15

United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

29. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action

against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

30.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

31.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 15 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this

17

1  paragraph does not affect defendant's and the USAO's obligations not
2  to contest the facts agreed to in this agreement.

3      32.   Defendant understands that even if the Court ignores any
4  sentencing recommendation, finds facts or reaches conclusions
5  different from those agreed to, and/or imposes any sentence up to the
6  maximum established by statute, defendant cannot, for that reason,
7  withdraw defendant's guilty plea, and defendant will remain bound to
8  fulfill all defendant's obligations under this agreement.  Defendant
9  understands that no one -- not the prosecutor, defendant's attorneys,
10 or the Court -- can make a binding prediction or promise regarding
11 the sentence defendant will receive, except that it will be between
12 any applicable statutory mandatory minimum and the statutory maximum.

13                    NO ADDITIONAL AGREEMENTS

14     33.   Defendant understands that, except as set forth herein,
15 there are no promises, understandings, or agreements between the USAO
16 and defendant or defendant's attorneys, and that no additional
17 promise, understanding, or agreement may be entered into unless in a
18 writing signed by all parties or on the record in court.

19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

1            <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2     34.   The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
7 CALIFORNIA

8 TRACY L. WILKISON
   Acting United States Attorney

9

10    *Kellye Ng-McCullough*          10/14/2021
                                    Date
   KELLYE NG-MCCULLOUGH
11 MAXWELL COLL
   Assistant United States Attorneys

12                                           10 8 21

13 CHELSA COLLIER                          Date
   Defendant

14                                           10/14/2021

15 MICHAEL L. BROWN, II               Date
   LAKESHIA DORSEY
16 Attorneys for Defendant
   CHELSA COLLIER

17

18

19

20

21

22

23

24

25

26

27

28

                        19

1                    <u>CERTIFICATION OF DEFENDANT</u>

2          I have read this agreement in its entirety.  I have had enough

3    time to review and consider this agreement, and I have carefully and

4    thoroughly discussed every part of it with my attorneys.  I

5    understand the terms of this agreement, and I voluntarily agree to

6    those terms.  I have discussed the evidence with my attorneys, and my

7    attorneys have advised me of my rights, of possible pretrial motions

8    that might be filed, of possible defenses that might be asserted

9    either before or at trial, of the sentencing factors set forth in 18

10   U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and

11   of the consequences of entering into this agreement.  No promises,

12   inducements, or representations of any kind have been made to me

13   other than those contained in this agreement.  No one has threatened

14   or forced me in any way to enter into this agreement.  I am satisfied

15   with the representation of my attorneys in this matter, and I am

16   pleading guilty because I am guilty of the charge and wish to take

17   advantage of the promises set forth in this agreement, and not for

18   any other reason.

19

20   CHELSA COLLIER                          Date
     Defendant

21

22

23

24

25

26

27

28

                              20

1      CERTIFICATION OF DEFENDANT'S ATTORNEYS

2          We are CHELSA COLLIER's attorneys.  We have carefully and

3  thoroughly discussed every part of this agreement with our client.

4  Further, we have fully advised our client of her rights, of possible

5  pretrial motions that might be filed, of possible defenses that might

6  be asserted either before or at trial, of the sentencing factors set

7  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8  provisions, and of the consequences of entering into this agreement.

9  To our knowledge: no promises, inducements, or representations of any

10  kind have been made to our client other than those contained in this

11  agreement; no one has threatened or forced our client in any way to

12  enter into this agreement; our client's decision to enter into this

13  agreement is informed and voluntary; and the factual basis set forth

14  in this agreement is sufficient to support our client's entry of a

15  guilty plea pursuant to this agreement.

16

17  MICHAEL L. BROWN, II                       10/14/2021
    LAKESHIA DORSEY                            Date
18  Attorneys for Defendant
    CHELSA COLLIER

19

20

21

22

23

24

25

26

27

28

21